UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CARLY MUNIZ, individually and on behalf of those similarly situated, | ) ) ) ) | |
| Plaintiff | ) ) ) | |
| v. | ) ) ) | Civil Action No. 24-cv-12050-DJC |
| LAKES/NATIONAL EMERGENCY PHYSICIANS, INC., JOSE AGUIRRE, and JENNIFER MOORE, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                    July 2, 2025

I. **Introduction**

Plaintiff Carly Muniz ("Muniz") has filed this lawsuit against Defendants Lakes/National Emergency Physicians, Inc. ("Lakes") as well as Jose Aguirre ("Aguirre") and Jennifer Moore ("Moore") (collectively, the "Individual Defendants") for violations of the Fair Labor Standard Act ("FLSA"), 29 U.S.C. § 201 *et seq.* ("Count I") and the Massachusetts Wage Act ("Wage Act"), Mass Gen. L. c. 149, §§ 148, 150 ("Count II"). D. 1. Lakes has now filed a suggestion of bankruptcy. D. 30. The Individual Defendants have moved to dismiss Muniz's complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). D. 19. For the reasons discussed below, the Court ALLOWS the motion to dismiss. Id.

II. **Standards of Review**

In ruling on a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) without an evidentiary hearing, a district court must apply the prima facie standard of review. United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). "Under this

1

standard, it is [the] plaintiff's burden to demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution." Id. (citing United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir. 1993)).  The Court considers the facts alleged in the pleadings as well as the parties' supplemental filings.  Sawtelle v. Farrell, 70 F.3d 1381, 1385 (1st Cir. 1995); Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). The Court will "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998) (citing Ticketmaster-New York, Inc., 26 F.3d at 203).  In doing so, the Court will "not credit conclusory allegations or draw farfetched inferences." Ticketmaster-New York, Inc., 26 F.3d at 203 (citing Dartmouth review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989)). The Court is also required to "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." Mass. Sch. of Law, 142 F.3d at 34 (citing Ticketmaster-New York, Inc., 26 F.3d at 203).

### III.  Factual Background

The following facts are drawn from Muniz's complaint, D. 1, the Individual Defendants' sworn affidavits in support of their motion to dismiss, D. 21; D. 22, and the sworn declaration and supporting exhibits in support of Muniz's opposition, D. 28-1.

Lakes operates a staffing agency which provides advanced practice professionals ("APPs") including physicians, physician assistants and other staffs, to hospitals, health centers and other facilities throughout the United States.  D. 1 ¶ 12.  The company is incorporated in Missouri.  D. 21 ¶ 2.  In or around November 2017, Muniz was hired by another staffing agency, EmCare, to work as a physician assistant at Holyoke Medical Center ("Holyoke Medical") in Holyoke, Massachusetts.  D. 1 ¶ 13.  Around February or March 2018, Lakes entered into a contract with

Holyoke Medical to replace EmCare as its staffing agency. D. 1 ¶ 14; D. 21 ¶ 10. As alleged, Muniz continued to work at Holyoke Medical as Lakes's employee. D. 1 ¶¶ 14, 16; D. 22 ¶ 12. Lakes agreed to pay Muniz and other APPs an hourly rate. D. 1 ¶ 16. As alleged, Muniz and other APPs at times worked more than forty hours in a single work week but were not paid time and a half for the excess hours. Id. ¶¶ 17-18. In or around the end of May 2024, Muniz was informed that she was being terminated and her last day of employment was set for June 30, 2024. Id. ¶¶ 23-24. As alleged, Muniz has not been paid all her overtime wages as of that date. Id. ¶¶ 25-26.

From 2017 through December 31, 2023, Moore was the president of Lakes. D. 21 ¶ 1. Throughout her tenure as Lakes's president, Moore lived and worked from Idaho. Id. ¶ 6. As attested, Moore's role as president was largely titular and she had virtually no specific responsibilities in connection with that role other than to sign contracts on Lakes's behalf. Id. ¶ 9. In February 2018, Lakes signed a contract with Holyoke Medical. Id. ¶ 10. Soon after the contract was signed, Moore traveled to Massachusetts where she briefly met Holyoke Medical's Chief Executive Officer ("CEO") to work on building the relationship between Lakes and the hospital. Id. ¶ 11. Moore also attested that she had taken an earlier trip to meet with the CEO before the contract was signed. Id. ¶ 12. During her visit to Holyoke Medical after the contract's signing, Moore toured the emergency department with the site's medical director where she was also informally introduced to some Lakes employees who worked there. Id. ¶ 13. As attested, Moore did not exercise any authority over Lakes employees or make any employment decisions for same. Id. ¶ 18. She further attested that she did not make any payroll decisions for Lakes employees and did not make decisions about whether Muniz or any Lakes employee received overtime pay or when final paychecks were paid. Id. ¶ 21.

As attested by Kristine Fleming, a physician's assistance who worked at Holyoke Medical, while serving as Lakes's president, Moore sent an email to a group of Holyoke Medical APPs,

3

including Muniz, about a meeting the APPs were supposed to have with Lakes's leadership concerning their compensation. D. 28-1 ¶¶ 7-8. In the email, Moore expressed her disappointment that members of Lakes's leadership did not show up to the meeting and communicated that Holyoke Medical APPs will have a new point of contact. Id. ¶ 9; id. at 6. Additionally, Moore stated that Lakes's Vice President ("VP") of Talent Acquisition and Provider Services will work with the new point of contact on the APPs' compensation requests. Id. at 6.

Aguirre, who lived and worked in Nevada, served as Lakes's president from January 1, 2024 through November 6, 2024 and attested similarly to Moore about the responsibilities of the role as well as the limited authority he had over employment and payroll decisions for Lakes employees. D. 22 ¶¶ 1, 6, 8, 9, 17, 18. In addition, Aguirre attested that he had never met or communicated with Muniz, never visited Holyoke Medical and have never traveled to Massachusetts for business purposes. Id ¶¶ 13-14. According to Fleming's declaration, Aguirre had one meeting with some APPs (including Fleming) in response to their request for meeting regarding compensation, after which Aguirre directed Lakes's Chief Financial Officer to consider the compensation requests and to follow up with the APPs. D. 28-1 ¶¶ 12-15.

### IV. Procedural History

Muniz initiated this action on August 9, 2024. D. 1. On October 28, 2024, Muniz moved to certify a conditional class. D. 7. On December 12, 2024, Muniz filed her first motion to amend the complaint. D. 17. The Individual Defendants moved to dismiss the complaint on January 24, 2025. D. 19. On February 21, 2025, Lakes filed a notice of suggestion of bankruptcy which caused an automatic stay of this action as against Lakes pursuant to 11 U.S.C. § 362. D. 30. In response, Muniz withdrew her motions to certify a conditional class and to amend, D. 17.[1] D. 31. The Court

---

[1] The Court ALLOWS Muniz's withdrawal of these motions, D. 31, and accordingly, the motion to certify a conditional class, D. 7, and her earlier motion to amend, D. 17, are DENIED as withdrawn.

heard the parties on the pending motion to dismiss, D. 19, and took the case under advisement. D. 35.

V.      Discussion

To establish personal jurisdiction over Individual Defendants, Muniz must "meet the requirements of both the Massachusetts long-arm statute and the Due Process Clause of the Fourteenth Amendment." Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015). Muniz suggests that the Court sidestep the statutory inquiry and proceed directly to analyze personal jurisdiction under Due Process. D. 28 at 4. Unlike other states' long-arm statutes, however, "the Massachusetts statute does not purport to extend jurisdiction as far as due process would allow." SCVNGR, Inc. v. Punchh, Inc., 478 Mass. 324, 328 (2017) (citations omitted). Accordingly, the Court assesses its jurisdiction first under the long-arm statute before proceeding to due process analysis. Id. at 330.

      A.      **Long-Arm Statute**

"Massachusetts's long-arm statute, [Mass. Gen. L. c. 223A, § 3], provides that '[a] court may exercise personal jurisdiction over a person . . . as to a cause of action in law or equity arising from the person's' one or more specific acts or omissions, as enumerated in the statute." SCVNGR, Inc., 478 Mass. at 328 (some alterations in original). Specifically, Muniz alleges that the Individual Defendants' conduct satisfies sufficient contacts with Massachusetts under c. 223A, § 3(a), concerning "acts directly or by any agent, as to a cause of action in law or equity arising from the person's transacting any business in this commonwealth." D. 28 at 5 n.1 (quoting Mass. Gen. L. c. 223A, § 3(a)). The Individual Defendants contend that Muniz has failed to meet these requirements because the facts alleged do not permit an inference that the Individual Defendants

have engaged in "active entrepreneurial or managerial conduct" in connection with Lakes in Massachusetts. D. 20 at 2.

When considering exercise of jurisdiction under c. 223A, § 3(a) over a corporate officer, it is not enough to allege transacting of business by the corporation since "it is axiomatic that jurisdiction over the individual officers of a corporation may not be based on jurisdiction over the corporation." Katz v. Liberty Power Corp., LLC, 693 F. Supp. 3d 154, 161 (D. Mass. 2023) (considering the application of c. 223A, §§ 3(a), (c)-(d) to a corporate officer) (internal citation and quotation marks omitted). Instead, "[t]he appropriate 'inquiry considers whether the individual was a primary participant in the alleged wrongdoing as it relates to the forum.'" Id. (some quotation marks omitted) (quoting Sensitech Inc. v. LimeStone FZE, 548 F. Supp. 3d 244, 254 (D. Mass. 2021)). To be such a primary participant, "active entrepreneurial or managerial conduct in the State where jurisdiction is asserted will cause jurisdiction to attach." Kleinerman v. Morse, 26 Mass. App. Ct. 819, 824 (1989). In Kleinerman, for example, the plaintiff sued the defendant, who was the president of both the subsidiary company and the parent company based in New York, and others. Id. at 821-22. The court held that Massachusetts courts had jurisdiction over the defendant whom it held to have engaged in "active entrepreneurial and managerial conduct" in Massachusetts because he was the president of the Massachusetts subsidiary, "major directives flowed from [the defendant] and major controversies were bucked up to him," and "he made inspectional visits" to the subsidiary company to "fulfill his duties." Id. at 824.

Here, Muniz alleges that Lakes and Individual Defendants have violated the FLSA for failing to pay her "one-half times the regular rate for each workweek in excess of forty hours," D. 1 ¶ 35, and the Wage Act for "failing to pay [Muniz] her earned wages on time and in full," id. ¶ 43. Thus, the Court must consider whether the Individual Defendants' conduct in or relating to Massachusetts can reasonably qualify as "active entrepreneurial and managerial" conduct and

whether that conduct relates to the claims in the complaint. Kleinerman, 26 Mass. App. Ct. at 824. As an initial matter, none of Individual Defendants' conducts in or relating to Massachusetts as described in either the complaint or affidavits and declaration can reasonably qualify as "active entrepreneurial or managerial conducts." Id. (citing Johnson Creative Arts, Inc., 573 F. Supp. at 1111). As alleged, Moore's conduct in or relating to Massachusetts consisted of signing the contract with Holyoke Medical, visiting it before and after the contract's signing, touring the facility and meeting its CEO and employees, as well as communicating with the Holyoke APPs via email. D. 21 ¶¶ 11-14; D. 28-1 ¶¶ 9-10. As for Aguirre, he allegedly never met or communicated with Muniz, never visited Holyoke Medical or traveled to Massachusetts for business purposes and never had direct communications with any employees of Lakes "regarding their work at Holyoke medical." D. 22 ¶¶ 13-15. Although Fleming attested that Aguirre had met with some APPs concerning their compensations requests, it was limited to one meeting in which Aguirre communicated that they would review the requests. D. 28-1 ¶ 13-15; see Lacy v. Jublia Pte Ltd., 20-P-1319, 2022 WL 982076, at *2 (Mass. App. Ct. Apr. 1, 2022) (holding that the CEO of the defendant company did not engage in "active entrepreneurial or managerial conduct" in Massachusetts because he did not actively recruit or negotiated an employment contract with the plaintiff in the state) (citations omitted). That is, the Individual Defendants' conduct is similar to the conduct of the two New York co-defendants in Kleinerman in which the court affirmed the dismissal for lack of personal jurisdiction where as to one "[a]part from twice attending and voting, so it was alleged, . . . at a directors' meeting in Massachusetts, there is no allegation of [his] conduct . . . in Massachusetts bearing on Kleinerman's claim," and as to the other, who "is said to have attended one meeting of the . . . board of directors in Massachusetts." Kleinerman, 26 Mass. App. Ct. at 825.

Even assuming *arguendo* that the Individual Defendants' conduct in Massachusetts was entrepreneurial and managerial, the allegations against them do not support personal jurisdiction under the long-arm statute because they are insufficiently related to Muniz's allegations of wrongdoing, i.e. failure to pay overtime wages and failure to pay wages. Here, none of the Individual Defendant's conduct either in or relating to Massachusetts can reasonably be said to concern wages where the Individual Defendants "played no role in, and had no involvement with, recruiting, hiring, supervising, or terminating the employment" of Lakes employees, D. 21 ¶ 17; D. 22 ¶ 17, "did not exercise any authority over Lakes employees or make any employment decisions for Lake employees," D. 21 ¶ 18; D. 22 ¶ 16, and had no responsibilities over "any payroll decisions for Lakes's employees" or "make decisions about whether [] Muniz or any Lakes employees received overtime pay or when final paychecks were paid," D. 21 ¶ 21; D. 22 ¶ 18.

Because Individual Defendant's conduct in Massachusetts were neither "active entrepreneurial or managerial" conduct nor related to the alleged wrongdoing, Kleinerman, 26 Mass. App. Ct. at 824, Individual Defendants were not the primary participants in the alleged FLSA and Wage Act violations. Perras v. Trane U.S., Inc., 463 F. Supp. 3d 38, 43 (D. Mass. 2020); cf. Post v. Mark Edward Partners LLC, No. 22-cv-10148-RWZ, 2022 WL 5118214, at *2 (D. Mass. Oct. 3, 2022) (concluding that the defendants were "primary participants" in wrongdoing where they "personally recruited [the] [p]laintiff" to the company for the purposes of "establish[ing] a presence" in Massachusetts, "personally negotiated the terms of his employment at the [c]ompany," and "directly supervised [p]laintiff's work for [the company], all of which was conducted in the Commonwealth"). Accordingly, jurisdiction over them is improper pursuant to the long-arm statute.

### B. Due Process Requirements

Typically, courts need not to consider the constitutional requirement of personal jurisdiction where the plaintiff has failed to satisfy the statutory requirements. See Katz, 693 F. Supp. 3d at 162 (quoting Azumi LLC v. Lott & Fischer, PL, 621 F. Supp. 3d 219, 223 (D. Mass. 2022)). In the interest of completeness, however, the Court analyzes the constitutional requirements here to adequately address Muniz's arguments.

Although "[p]ersonal jurisdiction may be either general or specific," Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010) (citing Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005)) because Muniz does not suggest that the Court has general jurisdiction over Individual Defendants, the Court will address specific jurisdiction only. Specific jurisdiction "allows a court to hear a particular case as long as 'that case relates sufficiently to, or arise from, a significant subset of contacts between the defendant and the forum.'" Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 35 (1st Cir. 2016) (citing Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999)). This analysis involves "three inquiries: relatedness, purposeful availment, and reasonableness." Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 9 (1st Cir. 2009) (quoting N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005)) (other citations omitted).

#### 1. Relatedness

The relatedness inquiry focuses on whether "the claim underlying the litigation . . . directly arise[s] out of, or relate[s] to, the defendant's forum-state activities." Id. (alterations in original) (quoting N. Laminate Sales, Inc., 403 F.3d at 25). This is a "flexible, relaxed standard," id. (quoting N. Laminate Sales, Inc., 403 F.3d at 25), but still requires a causal relationship between Muniz's claims and the Individual Defendants' forum-related conduct, Harlow, 432 F.3d at 61. Though not precisely proximate cause, "due process demands something like a 'proximate cause'

9

nexus." Id. (quoting Cambridge Literary Props. Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg., 295 F.3d 59, 65 (1st Cir. 2002)).  The critical element for this inquiry is whether a defendant can reasonably anticipate that their conduct would subject them to the forum state jurisdiction for a particular claim.  See Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 715 (1st Cir. 1996) (stating that "[a]dherence to a proximate cause standard is likely to enable defendants better to anticipate which conduct might subject them to a state's jurisdiction").

Here, as discussed, the Individual Defendants' conduct in or relating to Massachusetts have little to no relationship to Muniz's FLSA or Wage Act claims.  Moore's only contacts with Massachusetts include signing the contract with Holyoke Medical, visiting the hospital before and after the contract was signed, touring the hospital's facility and speaking with some Lakes employees there.  D. 21 ¶¶ 10-14.  Moore's only contact with the Holyoke APPs was through the email where she apologized to them and promised to change their point of contact and have others look into compensation.  D. 28-1 ¶¶ 8-10; id. at 6.  Aguirre's only contact relating to Massachusetts was his one meeting with some Holyoke Medical APPs concerning their compensation where he directed the Chief Financial Officer to follow up on their requests.  Id. ¶¶ 13-15.  None of this conduct can reasonably give Individual Defendants notice that they would be subject to personal jurisdiction in Massachusetts for FLSA and Wage Act claims, Nowak, 94 F.3d at 715, particularly since the Individual Defendants attested that they had no responsibilities over payroll decisions for Muniz or the APPs, D. 21 ¶ 21; D. 22 ¶ 18.

Muniz argues that "[r]elatedness can be met in a Wage Act case by demonstrating 'an ongoing connection with Massachusetts in the performance under the [employment] contract[,]' and that the plaintiff's claims arose 'from the alleged breach of that contract.'"  D. 28 at 6 (some alterations in original) (quoting C.W. Downer & Co. v. Bioriginal Food & Science Corp., 771 F.3d 59, 66 (1st Cir. 2014)).  As an initial matter, Muniz's argument here relies upon a

mischaracterization of some of the facts described in the affidavits and declaration.  For example, Muniz asserts that Moore "traveled to Massachusetts for the sole purpose of meeting with the CEO of Holyoke Medical Center to negotiate" the contract.  D. 28 at 7 (citing D. 21 ¶ 12).  While Moore attested that she had met with Holyoke Medical's CEO prior to the signing of the contract, nowhere in the affidavit does it mention that Moore played any role in negotiating the contract.  D. 21 ¶ 12.

Even assuming *arguendo* that Moore negotiated the contract, this fact would not be sufficient here to satisfy the relatedness inquiry.  To satisfy this inquiry, Muniz must demonstrate a connection between Individual Defendants' contacts with Massachusetts and a claim that was pled in the complaint.  See Astro-Med, Inc., 591 F.3d at 9 (noting that "[q]uestions of specific jurisdiction are always tied to the particular claims asserted") (quoting Phillips Exeter Acad., 196 F.3d at 289).  Here, Muniz now claims that the Individual Defendants' contacts with Massachusetts were pursuant to the performance under an employment contract and that her claims arose from the alleged breach of that contract.  D. 28 at 6.  Fatal to Muniz's argument, however, is the fact that she has not raised a breach of contract claim in the complaint where she has asserted only statutory claims for overtime pay and wages.  In the absence of such a claim, to the extent Individual Defendants' contacts in Massachusetts were in connection to the performance of an employment contract with Muniz, such contacts cannot satisfy the relatedness requirement as to the claims asserted.

To support her argument, Muniz cites several cases where courts in this Circuit have held that allegations relating to a breach of an employment contract can also satisfy the relatedness requirement for Wage Act claims.  D. 28 at 8 and cases cited.  These cases are distinguishable, however, because the Wage Act claims there were ancillary to and "ar[ose] from [an] alleged breach of [an employment] contract." C.W. Downer & Co, 771 F.3d at 66.  Cossart is illustrative.  There, the plaintiff, a Massachusetts worker, had entered into an employment contract with the

11

defendant company in which it agreed to pay him a commission for each successful business that he solicits on the defendant's behalf. Cossart, 804 F.3d at 16-17. When the defendant later refused to pay him the full commission for a business he solicited, the plaintiff sued both the company and its president for violations of the Wage Act. Id. at 17. The First Circuit held that the plaintiff has satisfied the relatedness requirement for the Wage Act claim because the lawsuit arose "out of an alleged breach . . . of a contract . . . [the] defendants procured with a Massachusetts resident to be performed by the resident primarily from Massachusetts." Id. at 20. In other words, because the disputed compensation giving rise to the plaintiff's Wage Act claim came from the plaintiff's employment contract, conducts in Massachusetts that gave rise to the breach of that contract necessarily related to the plaintiff's Wage Act claim. See id. 20-21. Here, Muniz's Wage Act claim is based on her allegations that she has not been paid "all her earned wages" including the alleged overtime wages that also form the basis of her FLSA claim, on the date of her termination. D. 1 ¶ 27, 35, 43. Unlike the Cossart plaintiff, Muniz does not allege that her compensation was part of an employment contract or that Lakes and Individual Defendants have breached the same. Id. ¶¶ 40-44.

For the reasons above, the Individual Defendants have not satisfied the relatedness requirement here.

### 2. Purposeful Availment

"The purposeful availment requirement ensures that jurisdiction is not premised on 'random, isolated, or fortuitous' contacts with the forum state." Weinberg v. Grand Circle Travel, LLC, 891 F. Supp. 2d 228, 245 (D. Mass. 2012) (citing Sawtelle, 70 F.3d at 1391). The inquiry into purposeful availment focuses on acts "by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958) (citing Int'l Shoe Co. v. State of Wash.,

Off. of Unemployment Comp. & Placement, 326 U.S. 310, 319 (1945)). "[T]he Supreme Court has explained that 'the foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" Knox v. MetalForming, Inc., 914 F.3d 685, 691 (1st Cir. 2019) (alterations in original) (quoting PREP Tours, Inc. v. Am. Youth Soccer Org., 913 F.3d 11, 80) (1st Cir. 2019)).

Here, of the Individual Defendants, only Moore had direct contacts with Massachusetts by signing the contract with Holyoke Medical on Lakes' behalf and by visiting the facility. D. 21 ¶¶ 10-14. Such limited, episodic contacts with Massachusetts, without more, are insufficient to satisfy the purposeful availment requirement. See Knox, 914 F.3d at 693 (stating that the purposeful availment analysis "will vary with the quality and the nature of the defendant's activity") (quoting PREP Tours, Inc. 913 F.3d at 20); Massachusetts Sch. of Law at Andover, 142 F.3d at 36-37 (collecting cases) (characterizing limited communications directed at the forum state as being insufficient to satisfy the purposeful availment requirement).

Muniz contends that she has satisfied the purposeful availment requirement because "both [] Moore and [] Aguirre facilitated that APPs' work for [Lakes] with an understanding that work would take place in Massachusetts." D. 28 at 9. As argued, Moore "facilitated" the APPs work by "negotiat[ing] the contract which employed the APPs, oversaw this contract in Massachusetts, and managed [] the APPs' compensation." Id. at 10. Aguirre "facilitated" by "directly overs[eeing] the employment of the APPs and their compensation." Id. Moore, however, attests that she had no role in negotiating or overseeing the contract with Holyoke Medical and, to the contrary, indicates that her real responsibility as Lakes's president was to "sign contracts on its behalf." D. 21 ¶ 9. Likewise, nothing in Aguirre's affidavit nor Fleming's description of the one meeting Aguirre had with the APPs, D. 28-1 ¶¶ 13-15, plausibly supports Muniz's contention that

13

Aguirre "directly oversaw the employment of the APPs and their compensation," D. 28 at 10. Accordingly, Muniz has failed to satisfy the purposeful availment requirement here.

### 3. Reasonableness Factors

The reasonableness inquiry is based on a balancing of the following "Gestalt factors": "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Cossaboon, 600 F.3d at 33 n.3 (quoting Harlow, 432 F.3d at 67). "The purpose of the [G]estalt factors is to aid the court in achieving substantial justice, particularly where the minimum contacts question is very close." Nowak, 94 F.3d at 717. Thus, "the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." Ticketmaster-New York, Inc, 26 F.3d at 210.

With respect to the first factor, it is fair to assume that it will be burdensome for the Individual Defendants, who are based in Idaho and Nevada, to appear in Massachusetts. That said, "staging a defense in a foreign jurisdiction is almost always inconvenient and/or costly . . . [thus] this factor is only meaningful where a party can demonstrate some kind of special or unusual burden," Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994), which the Individual Defendants have not done here.

As for the second factor, Muniz asserts that Massachusetts has an interest in adjudicating this dispute as it involves employees of Holyoke Hospital, based here in the state. D. 28 at 11. It should be noted, however, "[that] the Commonwealth's interest in the litigation sub judice is arguably lessened by the doubts surrounding whether defendant's act can be said to have been committed in the forum." Connell Ltd. P'ship v. Associated Indem. Corp., 651 F. Supp. 3d 293,

14

307 (D. Mass. 2023) (quoting Ticketmaster-New York, Inc., 26 F.3d at 211).  Thus, where the defendant's acts in the forum state, as here, did not give rise to the action, the forum's interest in the dispute is lessened.  Id.  Thus, this factor does not weigh in favor of jurisdiction.

The third factor requires the Court to consider the plaintiff's interest in obtaining convenient and effective relief.  Cossaboon, 600 F.3d at 33 n.3 (quoting Harlow, 432 F.3d at 67).  Consequently, "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience."  Sawtelle, 70 F.3d at 1385 (citations omitted).  Absent any arguments to the contrary from the Individual Defendants, the Court finds this factor weighs in favor of jurisdiction.

The fourth factor, is, at best, neutral.  The fourth factor – the judicial system's interest in obtaining the most effective resolution of the controversy – is "a wash" because "[e]ven though Massachusetts courts can effectively administer justice in this dispute, they have no corner on the market."  Baskin-Robbins Franchising LLC, 825 F.3d at 41.

Finally, as to the fifth factor, although "Massachusetts has a clear interest in affording its citizens a convenient forum in which to bring their employment claims," Crowe, 277 F. Supp. 3d at 194, in light of the other Gestalt factors, "that interest is not enough to tip the scale in favor of establishing personal jurisdiction over Individual Defendants in the Commonwealth," Katz v. Spiniello Companies, 244 F. Supp. 3d 237, 249 (D. Mass. 2017).

Taken together, the Gestalt factors do not support a finding of personal jurisdiction here.

## VI.   Conclusion

For the foregoing reasons, the Court ALLOWS Individual Defendants' motion to dismiss for lack of personal jurisdiction.[2]  D. 19.

---

[2] Shortly after the motion hearing, Muniz filed a second motion to amend the complaint, D. 33.  Since that amended complaint names three defendants, including Aguirre and Moore for which the Court has found no personal jurisdiction and the allegations in the proposed, amended

**So Ordered.**

/s Denise J. Casper
United States District Judge

---

complaint do not to support a contrary finding, the Court DENIES the motion to amend with prejudice as to those two defendants, but DENIES the motion to amend without prejudice as to the newly named defendant, Allan Rappaport, D. 33.